UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JASON FLAKES,

       Plaintiff,                              Hon. Janet T. Neff

v.                                                    Case No. 1:10-CV-25

JAMES VAN GORDON, et al.,

       Defendants.

_____/


## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Dismissal, (dkt. #21), and Defendant Stapleton's Motion for Dismissal, (dkt. #36). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that both motions be **granted** and Plaintiff's action dismissed.


## BACKGROUND

The following allegations are contained in Plaintiff's complaint. On March 8, 2008, Resident Unit Officer (RUO) James Van Gordon escorted Plaintiff to the showers. When he discovered there was no hot water, Plaintiff asked to be returned to his cell. In response, Van Gordon told Plaintiff, "you wanted a shower, take a shower." Plaintiff showered, after which Van Gordon returned with RUO Bennett. As Van Gordon and Bennett were escorting Plaintiff back to his cell, Plaintiff "slightly stopped to gain the attention of the unit sergeant." The sergeant ignored Plaintiff, who then asked Van Gordon and Bennett "to allow him to speak to the Lieutenant." In response, Van Gordon and Bennett twisted Plaintiff's arm and kicked his legs out from underneath him, causing Plaintiff to hit "the floor on his

head." Van Gordon and Bennett later charged Plaintiff with a major misconduct violation for "assault and battery on staff." Following this incident, Plaintiff was examined by Nurse Rick Bookheimer. Plaintiff requested that Bookheimer take photographs to document his injuries. Bookheimer refused.

Later that day, Plaintiff filed a Step I grievance alleging that RUO Van Gordon assaulted him "for no reason." Captain Laura Shockley interviewed Plaintiff concerning this matter and subsequently denied his grievance. This determination was approved by Deputy Warden Tim Ball. Plaintiff appealed the matter to Step II. Warden Cindi Curtin denied Plaintiff's Step II grievance appeal.

A hearing on Plaintiff's misconduct charge was conducted by Hearing Officer Elizabeth Buren. Finding the accounts given by Van Gordon and Bennett to be "consistent and persuasive," Buren found Plaintiff guilty of the charge. Plaintiff appealed his conviction to the Michigan Department of Corrections (MDOC) Grievance and Appeals Division. Hearing Administrator Richard Stapleton denied Plaintiff's appeal. Plaintiff then appealed the matter to the Ingham County Circuit Court where he obtained a reversal of his major misconduct conviction.

Plaintiff initiated the present action on January 11, 2010, against RUO Van Gordon, RUO Bennett, Nurse Bookheimer, Captain Shockley, Deputy Warden Ball, Warden Curtin, Hearing Officer Buren, and Hearing Administrator Stapleton. Plaintiff alleges that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment and his First Amendment right to "freedom of speech." Plaintiff also alleges that Defendants engaged in a conspiracy and, moreover, that he was denied parole "because of" his misconduct conviction. Plaintiff seeks injunctive and monetary relief. Defendants now move to dismiss Plaintiff's complaint.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere

allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no

reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.**         **Exhaustion**

Defendants assert that they are entitled to relief because Plaintiff has failed to properly exhaust any of the claims in his complaint through all three steps of the MDOC grievance process.

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus. *See Woodford,* 548 U.S. at 88. In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). The Supreme Court has stated that in the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 548 U.S. at 92. To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,* 544 U.S. 928 (2005); *accord Lancaster v. Adams,* 324 F.3d 423, 436-37 (6th Cir.2003).

Under the procedural default component of § 1997e(a), a prisoner's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir.2005), *cert. denied,* 126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the

determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the United States Constitution or the intended purposes of § 1997e(a). *See Spruill,* 372 F.3d at 232.

In support of their motion, Defendants have submitted copies of two grievances Plaintiff pursued through all three steps of the MDOC's grievance process. (Dkt. #22, Exhibit 1). These grievances were filed more than one year after the events giving rise to the present action and do not address the allegations advanced in Plaintiff's complaint. Plaintiff does not assert otherwise. These two grievances, therefore, do not serve to exhaust any of the allegations asserted in Plaintiff's complaint.

Defendants assert that these are the only two grievances that Plaintiff has properly pursued through all three steps of the grievance process. Defendants acknowledge that Plaintiff did file a grievance regarding the incident giving rise to this action (ECF-08-03-0491-17a), but assert that Plaintiff only pursued the matter through Step II of the grievance process.

In support of this assertion, Defendants have submitted an affidavit executed by Richard Stapleton. (Dkt. #22, Exhibit 1). Stapleton asserts that he is, and at all times relevant to the present action was, employed by the MDOC as the Administrator for the Office of Legal Affairs. According to Stapleton, a copy of every grievance filed by a prisoner is retained in the Office of Legal Affairs. Stapleton asserts that "a search of the grievance records relevant to step III grievance appeals filed by the plaintiff" revealed that Plaintiff failed to appeal Grievance ECF-08-03-0491-17a to Step III of the grievance process.

Plaintiff contends that he, in fact, pursued this particular grievance through all three steps of the grievance process. In support of his position, Plaintiff has submitted a copy of the Step I grievance he filed on March 8, 2008, alleging that Officer Van Gordon assaulted him earlier that day. (Dkt. #1, Exhibit G). Plaintiff has submitted a copy of the decision denying his Step I grievance. Plaintiff has not submitted a copy of his Step II grievance appeal, but has submitted a copy of the decision denying his Step II grievance. In support of his position that he appealed the matter to Step III, Plaintiff has not submitted the Step III grievance appeal form or any response thereto, but instead simply asserts in an affidavit that, "I received a denial at step 2, I then went on to step 3." (Dkt. #28 at 7).

Plaintiff fails to assert when he allegedly submitted his Step III grievance appeal, to whom it was sent, what issue or issues he raised in the grievance, or any other specifics concerning the matter. Instead, Plaintiff offers nothing more than the conclusion that he "went on to step 3." While Plaintiff's assertion *may* establish that he submitted a Step III appeal of the grievance in question it fails to establish that Plaintiff did so in accordance with MDOC policy. In other words, Plaintiff's bare conclusion that he "went on to step 3" does not establish that he *properly* exhausted the matter. On the other hand, Defendants have submitted evidence that Plaintiff failed to properly pursue this grievance through all three steps of the grievance process. The undersigned, therefore, recommends that Defendants' motions be granted and Plaintiff's claims be dismissed without prejudice for failure to exhaust administrative remedies.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Dismissal, (dkt. #21), be **granted**; Defendant Stapleton's Motion for Dismissal, (dkt. #36), be

**granted**; and Plaintiff's action be **dismissed without prejudice** for failure to properly exhaust administrative remedies.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: January 18, 2011  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge