UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON FLAKES #407798,

    Plaintiff,                             Hon. Janet T. Neff

v.                                         Case No. 1:10-CV-25

JAMES VANGORDON,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on an Order from the Honorable Janet T. Neff directing the undersigned to conduct an evidentiary hearing and issue a report and recommendation on the question whether Plaintiff has properly exhausted his administrative remedies. (Dkt. #195). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned finds that Defendant has failed to meet his burden in this matter and, therefore, recommends that Plaintiff has exhausted his available administrative remedies.

## BACKGROUND

The following allegations are contained in Plaintiff's complaint. On March 8, 2008, Resident Unit Officer (RUO) James Van Gordon escorted Plaintiff to the showers. When Plaintiff discovered there was no hot water, he asked to be returned to his cell. In response, Van Gordon told Plaintiff, "you wanted a shower, take a shower." Plaintiff showered, after which Van Gordon and RUO Bennett escorted Plaintiff back to his cell. As the trio proceeded, Plaintiff "slightly stopped to gain the attention of the unit sergeant." The sergeant ignored Plaintiff, who then asked Van Gordon and Bennett

"to allow him to speak to the Lieutenant." In response, Van Gordon and Bennett twisted Plaintiff's arm and kicked his legs out from underneath him, causing Plaintiff to hit "the floor on his head." Van Gordon and Bennett later charged Plaintiff with a major misconduct violation for "assault and battery on staff." Immediately following this incident, Plaintiff was examined by Nurse Rick Bookheimer. Plaintiff requested that Bookheimer take photographs to document his injuries. Bookheimer refused.

A hearing on Plaintiff's misconduct charge was conducted by Hearing Officer Elizabeth Buren. Finding the accounts given by Van Gordon and Bennett to be "consistent and persuasive," Buren found Plaintiff guilty of the charge. Plaintiff appealed his conviction to the Michigan Department of Corrections (MDOC) Grievance and Appeals Division. Hearing Administrator Richard Stapleton denied Plaintiff's appeal. Plaintiff then appealed the matter to the Ingham County Circuit Court where he obtained a reversal of his major misconduct conviction.

Plaintiff initiated the present action on January 11, 2010, against RUO Van Gordon, RUO Bennett, Nurse Bookheimer, Captain Shockley, Deputy Warden Ball, Warden Curtin, Hearing Officer Buren, and Hearing Administrator Stapleton. Plaintiff alleges that Defendants engaged in a conspiracy to violate his rights. Plaintiff additionally alleges that: (1) Defendants Buren and Stapleton violated his right to procedural due process and (2) Defendants VanGordon and Bennett violated his Eighth Amendment right to be free from cruel and unusual punishment as well as his First Amendment right to freedom of speech.

Defendants subsequently moved to dismiss Plaintiff's claims on the ground that Plaintiff failed to properly exhaust his administrative remedies. (Dkt. #21, 36). On January 18, 2011, the undersigned recommended that Defendants' motions be granted and this action dismissed. (Dkt. #44). This recommendation was adopted by the Honorable Janet T. Neff. (Dkt. #52). On February 8, 2013,

the Sixth Circuit reversed, finding that Defendants had failed to satisfy their burden on the exhaustion question. (Dkt. #77). Following discovery, Defendants again moved for summary judgment on several grounds, including failure to exhaust administrative remedies. (Dkt. #139).

On February 13, 2014, the undersigned recommended that Defendants' motion be granted in part and denied in part. (Dkt. #160). Specifically, the undersigned recommended that Plaintiff's claims be dismissed except for Plaintiff's Eighth Amendment claim asserted against Van Gordon in his personal capacity seeking monetary relief and Plaintiff's Eighth Amendment claim asserted against Van Gordon in his official capacity seeking injunctive and declaratory relief. With respect to these particular claims, Defendant Van Gordon conceded that the evidence submitted to that point was insufficient for him to obtain relief on exhaustion grounds. Van Gordon requested, therefore, that the Court conduct an evidentiary hearing on the exhaustion issue, a request which the undersigned recommended be denied. Judge Neff adopted the Report and Recommendation except as regarded Defendant Van Gordon's request for an evidentiary hearing on the question of exhaustion. (Dkt. #178). With respect to this issue, Judge Neff directed the undersigned to "conduct[] the evidentiary hearing regarding administrative exhaustion and fil[e] a report and recommendation on the issue." (Dkt. #195). Accordingly, the undersigned conducted an evidentiary hearing on February 13, 2015.

## **ANALYSIS**

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative

remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

Michigan Department of Corrections Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ P. If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance. *Id.* The grievance policy provides the following directions for completing grievance forms: "The issues should be stated briefly bur concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R. The prisoner must submit the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ FF. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

There is no dispute that Plaintiff timely filed a Step I and Step II grievance concerning his allegations against Defendant Van Gordon. (Dkt. #207, Exhibits F-G). The present dispute concerns whether Plaintiff properly pursued this matter to Step III of the grievance process. Before addressing this subject, however, the Court must address two alternative arguments advanced by Plaintiff that he was not required to properly exhaust his administrative remedies because the subject matter of his claims against Van Gordon were exempt from the prison grievance process. Specifically, Plaintiff argues that because the Internal Affairs Division was required to investigate his allegations against Van Gordon, he was not required to exhaust this matter through the prison grievance process. Plaintiff further argues that because his allegations against Van Gordon concerned a decision rendered in a misconduct hearing his claims were not subject to the prison grievance process. For the reasons discuss below, the Court is unpersuaded by these arguments.

   A.  Internal Affairs

Pursuant to MDOC policy, a prisoner "*may* file a Step I grievance directly with the inspector of the institution at which the prisoner is housed instead of with the grievance coordinator. .

.if the grievance alleges conduct which falls under the jurisdiction of the Internal Affairs Division." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ Q (emphasis added); *see also*, Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ V ("[a] grievant in a CFA facility alleging conduct under the jurisdiction of the Internal Affairs Division *may* send the grievance to the inspector for investigation and processing as set forth in Paragraph Q") (emphasis added). Pursuant to MDOC policy, the Internal Affairs Division "has jurisdiction to investigate. . .conduct which, if found to be true, would constitute a felony or misdemeanor." Mich. Dep't of Corr. Policy Directive 01.01.140 ¶ D. Plaintiff argues that because he alleged that he was assaulted by Defendant Van Gordon, a criminal act, the Internal Affairs Division was required to investigate his allegations thereby relieving him of the obligation to pursue an ordinary prisoner grievance. The Court is not persuaded.

First, even if it is assumed that Plaintiff's allegations concern a matter within the jurisdiction of the Internal Affairs Division, as the language quoted above makes clear, Plaintiff was not *required* to file his grievance with the Internal Affairs Division. Rather, the relevant policy gives to prisoners the option, at least as regards the present allegations, of filing a grievance with the Internal Affairs Division or with the grievance coordinator. Plaintiff made the choice to file his Step I grievance with the grievance coordinator. Plaintiff has presented no evidence that he attempted (or even desired) to pursue the matter through the Internal Affairs Division. Plaintiff has presented no authority supporting the proposition that a prisoner, who chooses to pursue a grievance through the normal grievance process, can later argue that whether he properly completed that process is irrelevant because the matter could have instead been presented to or investigated by the Internal Affairs Division.

Furthermore, while Plaintiff's claims against Van Gordon appear to fall within the jurisdiction of the Internal Affairs Division, Plaintiff has presented no evidence or authority supporting

his contention that, despite choosing not to present his grievance to the Internal Affairs Division, it was nevertheless *required* to investigate this matter and thereby relieve Plaintiff of his obligation to pursue the matter through the prison grievance system. To the contrary, the policy on which Plaintiff relies, and which is cited above, articulates a detailed process by which allegations which fall within the purview of the Internal Affairs Division are reviewed to determine whether such should be investigated by the Internal Affairs Division or instead by some other entity or individual. Mich. Dep't of Corr. Policy Directive 01.01.140 ¶¶ F-W. This is consistent with the testimony presented at the evidentiary hearing by Mary Ellen McDonald and Richard Russell that whether a matter such as this is investigated by the Internal Affairs Division requires an initial assessment or investigation as well as the exercise of judgment and discretion by prison officials. (Dkt. #211 at 20-23, 34-35, 48-49). The Court, therefore, rejects Plaintiff's argument that the Internal Affairs Division was obligated to investigate his allegations thereby relieving him of the obligation to pursue the matter through the prison grievance process.

        B.     Non-Grievable Issues

While prisoners are required to pursue most complaints and allegations of wrongdoing through the prison grievance process, there are certain matters that have been deemed "non-grievable issues" the resolution or assessment of which cannot be pursued through the prison grievance process. Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ F. For example, complaints concerning "[d]ecisions made in hearings conducted by hearing officers. . .and issues directly related to the hearing process (e.g., sufficiency of witness statements; timeliness of misconduct review; timeliness of hearing)" are considered "non-grievable issues." *Id.* Plaintiff argues that because his allegations against Defendant

Van Gordon concern the results of his misconduct hearing, the claims presented in the present action are "not subject to the Grievance Process." The Court is not persuaded.

In the present action, Plaintiff alleges that Defendant Van Gordon violated his right to be free from cruel and unusual punishment by subjecting him to unreasonable and/or unnecessary force. Likewise, Plaintiff's Step I and Step II grievances do not concern Hearing Officer Buren's decision or the hearing she conducted, but instead concern Plaintiff's allegations that he was improperly assaulted by Defendant Van Gordon. The Court fails to discern how Plaintiff's claims against Van Gordon concern Buren's decision regarding a different issue altogether or the process by which she reached her decision. Plaintiff's position appears to be that any legal claim arising out of an incident in which a prisoner was also charged with an unrelated misconduct violation relieves the prisoner of the obligation to pursue administrative remedies with respect to his particular allegations. Plaintiff has identified no authority supporting such a position. The Court further notes that Plaintiff's position is contrary to the stated purpose of the Prison Litigation Reform Act, namely to afford prison administrators the greatest opportunity possible to resolve prisoner complaints before such can be asserted in federal court. The Court, therefore, rejects this argument.

C. Defendant has not met his Burden

Having determined that Plaintiff was required to pursue his claims against Van Gordon through the prison grievance process, the Court turns to the question whether Defendant has met his burden to demonstrate that Plaintiff failed to comply with this requirement. As previously noted, Defendant concedes that Plaintiff pursued this matter through Steps I and II of the prison grievance

process. Thus, the present dispute is limited to whether Plaintiff also pursued the matter to Step III of the grievance process.

Mary Ellen McDonald testified that during the time period in question she was employed as the Grievance Coordinator at the facility where Plaintiff was then housed. (Dkt. #211 at 6). McDonald testified that while she was directly involved in processing grievances at the first two steps of the grievance process, she had no involvement with the processing or resolution of Step III grievances. (Dkt. #211 at 6-17). McDonald indicated that Step III grievances are mailed by the prisoner directly to the office of the Legislative Corrections Ombudsman and are not recorded or processed at the individual prison facilities. (Dkt. #211 at 17-18). McDonald conceded that she had no first hand knowledge whether Plaintiff filed a Step III grievance concerning his allegations against Defendant Van Gordon. (Dkt. #211 at 17-18).

Richard Russell testified that a records search revealed no indication that Plaintiff timely submitted a Step III grievance. (Dkt. #211 at 38-45). Russell conceded, however, that the records search he conducted only established that prison officials in Lansing never received a Step III grievance from Plaintiff and did not indicate whether Plaintiff provided a Step III grievance to prison officials for mailing. (Dkt. #211 at 53-54).

Plaintiff testified that during the time period in question he was housed in segregation. (Dkt. #211 at 57-58). Plaintiff further testified that while he was housed in segregation, he had to rely on prison staff to supply him with grievance forms and, moreover, to "take those forms and ensure that they got to the proper place." (Dkt. #211 at 57-58). Defendant presented no evidence to the contrary. With respect to his attempts to submit a Step III grievance, Plaintiff testified that he completed the appropriate form and timely submitted it for mailing. (Dkt. #211 at 65-66, 89-90). Specifically, Plaintiff

testified that he placed the grievance in an envelope which he subsequently handed through his food slot, during second shift, to prison officials for mailing. (Dkt. #211 at 65-66, 89-90). Again, Defendant presented no evidence to the contrary.

Defendant failed to present any evidence from anybody possessing first hand knowledge concerning the question on which this matter turns, namely whether Plaintiff timely submitted to prison officials a Step III grievance regarding his allegations against Defendant Van Gordon. Defendant's position is that because Plaintiff was able to successfully transmit, through internal prison mail as well as the United States Postal Service, numerous other grievances and similar documents it is not reasonable to conclude that Plaintiff submitted a Step III grievance for mailing and that such was not received by prison officials. According to Defendant, the evidence that prison officials do not have receipt of Plaintiff's Step III grievance establishes that Plaintiff did not submit such for mailing. This conclusion, however, rests upon speculation rather than evidence presented to the Court.

Defendant presented no evidence calling into question Plaintiff's testimony that he timely submitted his Step III grievance to prison officials for mailing. As for Defendant's confidence in the United States Postal Service, he presented no evidence indicating the percentage of mail that is not properly delivered or received. Furthermore, as for Defendant's argument that Plaintiff has successfully transmitted through the mail many other matters, such undercuts, in the Court's estimation, Defendant's position. As Plaintiff asserts, this evidence demonstrates his diligence in pursuing his various claims and grievances which lends support to his position that he, in fact, prepared and submitted for mailing a Step III grievance, but that such was not successfully transmitted and/or delivered.

In sum, the Court found Plaintiff to be reasonably credible, especially with respect to his efforts and actions to pursue the grievance in question through all three steps of the grievance process.

The evidence that Plaintiff has successfully pursued many other grievances and similar matters, in the Court's estimation, supports Plaintiff's position as it demonstrates his diligence in pursuing his claims and grievances.  The Court did not find Mary Ellen McDonald or Richard Russell lacking in credibility.  Rather, the shortcoming with their testimony was that it was largely irrelevant or supported Plaintiff's position.  As previously noted, Defendants presented no evidence calling into question Plaintiff's testimony that he timely submitted his Step III grievance to prison officials for mailing.  Thus, Defendant's argument rests upon the unsubstantiated belief that the United States Postal Service successfully delivers every single item of mail with which it is presented.  In the absence of any evidence supporting such, Defendant's argument fails.  Stated differently, Defendant bears the burden to establish that Plaintiff failed to properly exhaust his administrative remedies in this matter.  Defendant cannot satisfy his burden based on nothing more than unsubstantiated speculation.

## CONCLUSION

For the reasons articulated herein, the undersigned finds that Defendant Van Gordon has failed to meet his burden to demonstrate that Plaintiff failed to properly exhaust his remaining claims. The undersigned further recommends, therefore, that Plaintiff be found to have exhausted his available administrative remedies as to such claims and that such claims go forward.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: April 14, 2015

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge